NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SEALY TECHNOLOGY, LLC,**
*Appellant*

**v.**

**SSB MANUFACTURING COMPANY, FKA SIMMONS BEDDING COMPANY,**
*Appellee*

---

2019-1872

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 95/001,535.

---

Decided: August 26, 2020

---

STEVEN MOORE, Kilpatrick Townsend & Stockton LLP, San Francisco, CA, for appellant. Also represented by N. DEAN POWELL, Winston-Salem, NC.

JON STEVEN BAUGHMAN, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, DC, for appellee. Also represented by STEFAN GEIRHOFER, MEGAN FREELAND RAYMOND.

---

Before PROST, *Chief Judge*, REYNA and HUGHES, *Circuit Judges*.

PROST, *Chief Judge*.

Sealy Technology, LLC ("Sealy") appeals from the decision of the United States Patent and Trademark Office, Patent Trial and Appeal Board ("Board") in an inter partes reexamination concluding that the single claim of United States Design Patent No. D622,088 ("the '088 patent") is unpatentable under 35 U.S.C. §§ 102 and 103. *See Simmons Bedding Co. v. Sealy Tech. LLC*, No. 2018-004259, 2018 WL 4181572 (P.T.A.B. Aug. 28, 2018) ("*Decision*"); *Simmons Bedding Co. v. Sealy Tech. LLC*, No. 2018-004259, 2019 WL 1489534 (P.T.A.B. Mar. 28, 2019) ("*Decision on Rehearing*"). For the reasons below, we affirm.

I

The '088 patent, entitled "Mattress Design," contains a single claim that recites "[t]he ornamental design for a mattress design, as shown and described." '088 patent claim 1. The '088 patent includes 10 figures. Figure 1, shown below, is a perspective view of a first embodiment of the mattress.



Fig. 1

'088 patent at Figure 1.

In January 2011, SSB Manufacturing Company ("Simmons") sought inter partes reexamination of the '088 patent.  Upon granting reexamination, the examiner agreed that Simmons presented newly found prior art.  While the examiner entered a single rejection, she declined to adopt any other rejections based on the references Simmons presented.  Sealy appealed the examiner's decision to adopt the rejection and Simmons cross-appealed arguing that the examiner should have adopted additional rejections.

The Board reversed the examiner's rejection but also entered two new grounds of rejection.  Specifically, the Board found that Somma Nouveau 500 ("Somma Nouveau") (J.A. 1017) anticipates the claimed design under 35 U.S.C. § 102 and that Somma Nouveau in combination with Ad Trends (J.A. 439) or Art Van (J.A. 437) renders the claimed design obvious under 35 U.S.C. § 103.

In reaching these determinations, the Board found that the only contrast claimed in the design is "one of differing appearance from the rest of the mattress."  *Decision*, 2018 WL 4181572, at \*2.  The Board further pointed out that, based on the '088 patent's use of dashed lines, Sealy had "disclaimed the body of the mattress and so the only parts of the mattress that are actually part of the claim are the mattress edges and handle edges, as well as the handle material."  *Id.*  The Board explained that the use of dashed lines in Figures 1–3 along the corners of the mattress and the use of dashed lines in Figure 4 along the top of the mattress showed that Sealy disclaimed these portions of the mattress from its design.  *Id.*  In addition, the Board explained "that the contrast necessary is only between the handle material and mattress edges/handle edges."  *Id.*

Sealy requested rehearing, which the Board denied.  Sealy then appealed to this court.  We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

II

Sealy first challenges the Board's construction of the claimed contrast. The Board, based on its construction of "contrast" in the related reexamination proceeding for U.S. Design Patent No. D622,531, determined that the only contrast claimed is "one of differing appearance from the rest of the mattress." *Decision*, 2018 WL 4181572, at *2 (quoting *Simmons Bedding Co. v. Sealy Tech. LLC*, No. 2014-007985, 2015 WL 1481100, at *3 (P.T.A.B. Mar. 31, 2015)). Sealy contends that the Board's view of contrast is too broad and effectively reads out any contrast from the claimed design. Sealy proposes that the proper interpretation of contrast, as invoked in the figures of the '088 patent, requires "contrasting value and/or color." Appellant's Br. 31. According to Sealy, such contrast would require there to be "something that causes the edge to stand out or to be strikingly different and distinct from the rest of the design to be considered in contrast." *Id.* at 33.

During an inter partes reexamination proceeding, the Board applies the broadest reasonable construction when interpreting the meaning and scope of the claim. *In re Bond*, 910 F.2d 831, 833 (Fed. Cir. 1990). We review the Board's construction "based on intrinsic evidence de novo and its factual findings based on extrinsic evidence for substantial evidence." *HTC Corp. v. Cellular Commc'ns Equip., LLC*, 877 F.3d 1361, 1367 (Fed. Cir. 2017).

We agree with the Board's interpretation regarding the level of contrast claimed. First, the '088 patent does not provide any textual description regarding the contrast in the '088 patent. Instead, Sealy's argument regarding the claimed contrast is based on how "[d]esign patent drawing[] conventions make clear that contrast may be shown by using line shading in one area and stippling in another." Appellant's Br. 31 (citing *Manual of Patent Examining Procedure* ("MPEP") § 1503.02(II)); *see also* Reply Br. 11–12.

The question, however, is not whether line shading and stippling indicates contrast, but rather, whether it indicates contrast only to the degree Sealy prefers—e.g., "strikingly different." The very MPEP section Sealy relies on indicates that it does not. MPEP § 1503.02(II) provides that the claim will "broadly cover contrasting surfaces unlimited by colors," and that the "claim would not be limited to specific material." Accordingly, § 1503.02(II) does not limit the level of contrast to the particular degree that Sealy urges.

In light of the above, we agree with the Board's interpretation of contrast as it pertains to the '088 patent—that the only contrast required is one of differing appearance, which may be achieved by such means as "contrasting fabric, contrasting color, contrasting pattern, and contrasting texture," *Decision*, 2018 WL 4181572, at *2. Neither the '088 patent nor the drawing convention that Sealy claims to have invoked limits the level of contrast to the particular degree Sealy urges.

## III

Sealy also challenges the Board's obviousness determination. Specifically, Sealy challenges the Board's treatment of Somma Nouveau as a primary reference, whether the Board provided sufficient motivation to combine Somma Nouveau with Ad Trends or Art Van, and whether the Board properly considered Sealy's secondary consideration arguments.

## A

"For design patents, the ultimate inquiry for obviousness is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved." *Spigen Korea Co. v. Ultraproof, Inc.*, 955 F.3d 1379, 1383 (Fed. Cir. 2020) (internal quotation marks omitted). Obviousness is a question of law based on underlying factual questions. *MRC Innovations, Inc. v.*

*Hunter Mfg., LLP*, 747 F.3d 1326, 1331 (Fed. Cir. 2014). Such factual inquiries include "(1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of non-obviousness." *Id.* (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966)).

We review the Board's legal determinations de novo and its factual findings for substantial evidence. *Campbell Soup Co. v. Gamon Plus, Inc.*, 939 F.3d 1335, 1339 (Fed. Cir. 2019). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "Where two different conclusions may be warranted based on the evidence of record, the Board's decision to favor one conclusion over the other is the type of decision that must be sustained by this court as supported by substantial evidence." *IXI IP, LLC v. Samsung Elecs. Co.*, 903 F.3d 1257, 1262 (Fed. Cir. 2018) (quoting *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 970 (Fed. Cir. 2007)).

B

1

The obviousness analysis for design patents requires that there be a prior art design that qualifies as a primary reference. *Spigen*, 955 F.3d at 1383, 1385. Whether a prior art design qualifies as a primary reference depends on whether the prior art reference "creates 'basically the same' visual impression as the claimed design." *Id.* (cleaned up). The determination of whether a prior art design qualifies as a primary reference is a factual issue. *Id.* (citation omitted).

In determining that Somma Nouveau is a proper primary reference, the Board found that Somma Nouveau created the same overall visual impression as the claimed design. Specifically, the Board noted that Somma Nouveau

"clearly shows edging/piping that is darker in color than the center material of the handles as well as being of a different material sufficient to show contrast." *Decision*, 2018 WL 4181572, at *3. It further determined that "Somma Nouveau also discloses the requisite handles on both sides and ends of the mattress." *Id*. Sealy contends that Somma Nouveau is not a proper primary reference because Somma Nouveau is not "basically the same" as the claimed design. Specifically, Sealy contends that Somma Nouveau improperly includes a duvet and lacks the requisite contrast.

An image of Somma Nouveau, annotated by Simmons and reproduced in Sealy's Reply Brief, is produced below.



Appellee's Br. 58; Reply Br. 18.

First, as Simmons points out, the duvet only covers a portion of the top of the mattress. The top of the mattress in the '088 patent, however, has been disclaimed and is therefore not part of the claimed design. Further, the presence of the duvet fasteners on the handles is no more than a slight difference in design, *MRC Innovations*, 747 F.3d at 1333, and does not detract either from the Board's finding

that Somma Nouveau discloses the requisite handles, or from its overall finding that Somma Nouveau creates basically the same visual impression as the claimed design.

Second, Sealy contends that Somma Nouveau is a generally monochromatic mattress that lacks the requisite contrast to create the same visual impression as the claimed design. This argument, however, depends on us adopting Sealy's proposed interpretation of contrast. *See* Appellant's Br. 41. As discussed, however, we agree with the Board's interpretation of contrast. With this interpretation in mind, we find that substantial evidence supports the Board's finding of the requisite contrast. *See Decision*, 2018 WL 4181572, at *3 ("Somma Nouveau 500 clearly shows edging/piping that is darker in color than the center material of the handles as well as being of a different material sufficient to show contrast."); *Decision on Rehearing*, 2019 WL 1489534, at *1 ("[C]ontrast is not limited to color and can be due to contrasting fabric/pattern.").

Because substantial evidence supports the Board's determination that Somma Nouveau discloses "basically the same" design as the claimed design, we affirm the Board's finding that Somma Nouveau constitutes a primary reference.

2

A primary reference may be combined with a secondary reference if the secondary reference and the primary reference are "so related that the appearance of certain ornamental features in one would suggest the application of those features to the other." *MRC Innovations*, 747 F.3d at 1334 (internal quotation marks omitted). We have noted that "it is the mere similarity in appearance that itself provides the suggestion that one should apply certain features to another design." *Id.* at 1334.

While the Board noted that Somma Nouveau "does not have deficiencies," the Board nevertheless considered

the combination of Somma Nouveau with Ad Trends or Art Van. *Decision on Rehearing*, 2019 WL 1489534, at *2. Although, as discussed, the Board correctly interpreted the claimed contrast, the Board determined that this combination provides a "higher level of contrast . . . with handles all around" and "provides the overall impression" of the claimed design, "mak[ing] the claim obvious." *Id.* Sealy contends that the Board failed to provide the requisite motivation to combine Somma Nouveau with Ad Trends or Art Van.

The Board, in finding that a designer of ordinary skill would combine Somma Nouveau with Ad Trends or Art Van, first found that Ad Trends and Art Van included all the other claimed design elements with the exception that Ad Trends and Art Van only have handles on two sides of the mattress as opposed to all four. The Board determined that, in light of the prior art being replete with mattresses showing handles on both the ends and sides of the mattress, the lack of handles on the ends of Ad Trends and Art Van was "merely a trivial difference." *Decision*, 2018 WL 4181572, at *3; *see MRC Innovations*, 747 F.3d at 1334 (considering whether a secondary reference is "so related [to the primary reference] that the appearance of certain ornamental features in one would suggest the application of those features to the other," and noting that "it is the mere similarity in appearance that itself provides the suggestion that one should apply certain features to another design"). We conclude that substantial evidence supports both the Board's finding of similarity in appearance between Somma Nouveau and Ad Trends/Art Van and its finding that a designer of ordinary skill would have been motivated to incorporate the enhanced contrast from Ad Trends/Art Van to Somma Nouveau.

3

Sealy also challenges the Board's findings regarding Sealy's purported secondary considerations. The Board

stated that it was "not persuaded by [Sealy]'s evidence of secondary considerations," *Decision*, 2018 WL 4181572, at *3, and that its decision "endorsed the Examiner's findings," *Decision on Rehearing*, 2019 WL 1489534, at *2 (citing Examiner's secondary consideration findings at J.A. 2620–23). Upon review, we determine that substantial evidence supports these findings.

"For secondary considerations to have probative value, the decision maker must determine whether there is a nexus between the merits of the claimed invention and the secondary considerations." *Ashland Oil Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 306 n.42 (Fed. Cir. 1985). The presence of a nexus is a factual question that we review for substantial evidence. *Merck & Cie v. Gnosis S.P.A.*, 808 F.3d 829, 837 (Fed. Cir. 2015). It is the patentee's "burden of production to demonstrate a nexus between the claimed design and the secondary considerations." *MRC Innovations*, 747 F.3d at 1336; *see Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1378 (Fed. Cir. 2019) (placing on the patentee the "burden of proving that the evidence of secondary considerations is attributable to the claimed [features], as opposed to . . . unclaimed features"); *id* at 1373–74 (Patent owner may "prove nexus by showing that the evidence of secondary considerations is the direct result of the unique characteristics of the claimed [design]" (internal quotation marks and citation omitted)). Further, "weak secondary considerations generally do not overcome a strong prima facie case of obviousness." *W. Union Co. v. MoneyGram Payment Sys., Inc.*, 626 F.3d 1361, 1373 (Fed. Cir. 2010).

To the extent that Sealy is arguing that the Board improperly evaluated its evidence of commercial success and industry praise, Sealy has not explained in its briefing to us how its evidence of these secondary considerations is the direct result of the unique characteristics of the claimed design. For example, the examiner stated that she did "not see a clear nexus or connection between the sales of the

article and the design claimed." J.A. 2621. Sealy's briefing does not explain how the commercial success was the direct result of the claimed design. Likewise, Sealy does not explain how the industry praise it cites in its briefing is the direct result of the claimed design. For its part, Simmons points out that the exhibits Sealy submitted alongside its declaration detailing Sealy's evidence of secondary considerations highlight features that are not claimed in the '088 patent, such as an "industry-changing innerspring." *See* Appellee's Br. 70 (quoting J.A. 1115). Accordingly, we do not find that the Board erred in its treatment of Sealy's evidence of commercial success or industry praise.

With respect to "copying," the examiner began his analysis by correctly noting that "more than the mere fact of copying is necessary to make that action significant." J.A. 2621 (citing *Cable Elec. Prods. Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1028 (Fed. Cir. 1985), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999)); *see also Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1380 (Fed. Cir. 2000) ("[A] showing of copying is only equivocal evidence of non-obviousness in the absence of more compelling objective indicia of other secondary considerations."). The examiner then considered a declaration from Sealy's Vice President of Marketing, a letter from an executive in the mattress industry, and Simmons's arguments regarding the state of the prior art. *See* J.A. 2621–23. Having considered the evidence, the examiner determined "that there is nothing about copying the ['088] design that makes it less obvious in view of the prior art." J.A. 2623; *see also* J.A. 2621 (Examiner determining that the submitted evidence of copying does not outweigh the evidence of obviousness). We see no error in the treatment of "copying" in this case.

## IV

We have considered Sealy's remaining arguments and find them unpersuasive. For the foregoing reasons we

12    SEALY TECHNOLOGY, LLC v. SSB MANUFACTURING COMPANY

affirm the Board's decision that the claim of the '088 patent is obvious. Accordingly, we need not reach the question of anticipation.

**AFFIRMED**